181 N.W.2d 841 (1970)
186 Neb. 175
UNITED BENEFIT FIRE INSURANCE COMPANY etc., Appellant,
v.
Max A. EARL, d/b/a Earl Insurance Agency, Appellee.
No. 37440.
Supreme Court of Nebraska.
December 11, 1970.
Craig F. Swoboda, Omaha, Thomas H. Dorwart, Lincoln, for appellant.
Lyle E. Strom, C. L. Robinson, Fitzgerald, Brown, Leahy, McGill & Strom, Omaha, for appellee.
Heard before WHITE, C. J., and CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN and NEWTON, JJ.
SMITH, Justice.
United Benefit Fire Insurance Company in involuntary liquidation sued Max A. Earl, its soliciting agent, on an account. The court instructed the jury to limit any recovery by United to earned premiums collected by Earl but not transmitted to United. Verdict went for Earl and United appeals. It contends that other items, especially financed premiums and unearned *842 commissions, were held by Earl as its fiduciary.
On November 24, 1965, the district court decreed the involuntary liquidation which canceled all United policies and authorized suit in United's name. See S. 44-127, R.R. S.1943. United's claim against Earl amounted to $9,530.12, based on testimony of an insurance accountant who had examined United's records. The accountant divided the claim into four categories, the first two concerning policies canceled by the liquidation and the last two concerning preliquidation cancellations, as follows: (1) Unpaid financed premiums and unearned commissions on them, $7,427.24; (2) unearned commissions where premiums had not been financed, $419.73; (3) financed premiums, $99.95; and (4) unearned commissions and unearned finance, less unearned premiums, $173.49.
The agency agreement, dated December 30, 1964, imposed duties on Earl (1) to refund to United unearned commissions on return premiums; (2) to collect all premiums and hold them as trust funds belonging to United; and (3) to account monthly for business conducted. United authorized Earl to deduct net commissions. It also gave him a rate schedule which stated: "Premium Budget Available with North American. * * * Agent has no liability on the contract except to return unearned commissions in the event of cancellation. * * * Agent may deduct his commission from the downpayment and remit the balance to North American. * *" United supplied Earl with forms of the North American financing agreement which read: "AGENTS AGREEMENT. * * * in the event of cancellation * * I agree * * * to direct the Company to reimburse North American * * * (for) unearned premiums. * * *"
Practice departed from the writings. By oral agreement between United and Earl an application that was accompanied with a North American financing agreement was transmitted directly by Earl to United. The latter rendered the monthly statements of account. Earl paid most of the statements that charged him for financed premiums and unearned commissions. He did not, however, pay the balance due as shown on the statements for September and October 1965. There was no other important agreement relating to North American.
The insurance accountant found no records of North American and no financing agreement among United's records. The inter-company relationship was a mystery.
On September 28, 1965, United notified Earl that it would accept no more applications, and its financial weakness was common talk among insurance men. Earl then either returned money received from customers or rewrote the insurance with another company. He had been following a trade usage of paying return premiums to his customers.
The status of premiums held by an agent in ordinary insurance transactions is governed by section 44-328, R.R.S.1943, which provides: "Any person * * * who shall with authority receive * * * money on account of * * * any contract of insurance * * * from other persons to be transmitted to any such (insurance) company * * * for a policy * * *, shall be deemed to all intents and purposes an agent * * * of such company." We doubt that the framers of the quoted section contemplated involuntary liquidation of the insurance company.
Some courts have said that the agent holds unearned premiums and commissions for his customers and not in a fiduciary capacity for the insurance company in receivership or involuntary liquidation. See, Bushnell v. Krafft, 133 Ind.App. 474, 183 N.E.2d 340 (1962); Bohlinger v. Zanger, 306 N.Y. 228, 117 N.E.2d 338 (1954), noted 54 Colum.L.Rev. 638 (1954). Other courts have asserted the contrary. See, Garrison v. Edward Brown & Sons, 25 Cal.2d 473, 154 P.2d 377 (1944); Clay v. Eagle Reciprocal Exchange, 368 S.W.2d 344 (Mo., 1963); Shoup v. Mayerson, 454 P.2d 666 *843 (Okl., 1969); Korlann v. E-Z Pay Plan, Inc., 247 Or. 170, 428 P.2d 172 (1967) (O'Connell, J., dissenting).
We consider (1) the agent's need to maintain good business relations with his customers, (2) statutory and decisional law governing ordinary insurance transactions, (3) the vital interest of the state in the field of insurance, and (4) the purpose of involuntary liquidation to achieve equality of treatment among policyholders and other creditors, the equality of course being subject to equitable preferences.
On balance the following rule is approved: Unearned premiums and unearned commissions held by an insurance agent are held in a fiduciary capacity for the company and are recoverable for the company in involuntary liquidation.
There were too many gaps in the evidence of North American financing for the district court to submit categories (1), (3), and (4) of United's claim to the jury. Withdrawal of category (2), however, was prejudicial error.
The judgment is reversed and the cause remanded for a new trial.
Reversed and remanded for a new trial.