703 P.2d 1197

**MURDOCK–BRYANT CONSTRUCTION, INC., an Arizona corporation; and Sentry Indemnity Company, a foreign corporation, Plaintiffs-Appellees,**

v.

**Taylor PEARSON, dba Taylor Pearson Construction Company; Robert Wilbur individually and jointly; University Industries, individually and jointly; and Insurance Company of North America a corporation, Defendants-Appellants.**

**No. 17633–PR.**

Supreme Court of Arizona, En Banc.

July 1, 1985.

Jennings, Kepner & Haug by William F. Haug, Michael J. Raymond, Phoenix, and Tolley, Fisher & Verwys by Peter R. Tolley, Grand Rapids, Mich., and Mangum, Wall, Stoops & Warden by Daniel J. Stoops, Flagstaff, for Murdock-Bryant/Sentry Indem.

Meyer, Vucichevich & Cimala by Ronald H. Cimala, George R. Ferrin, Phoenix, for Taylor Pearson/Insurance Co. of North America.

Black, Robertshaw & Copple by Richard A. Black, Phoenix, for Wilbur/University Industries.

FELDMAN, Justice.

Murdock-Bryant Construction, Inc. (Murdock), a subcontractor, brought an action seeking recovery for fraud, breach of contract, and restitution against the prime contractor, Taylor Pearson, dba Taylor Pear-

son Construction Co. (Pearson). Murdock also joined Robert Wilbur and University Industries, Inc. (UI) as defendants, alleging they were joint venturers with Pearson. All defendants counterclaimed, seeking damages from Murdock for breach of contract.

The case was tried to a jury on the equitable theory of restitution. The jury found for Murdock and against all the defendants, returning a verdict for $392,000. Deeming the verdict advisory only,[1] the trial judge recomputed damages, ruled on various post-trial motions, and entered judgment against all defendants, awarding Murdock damages of $273,000 plus attorney's fees and denying all relief on defendants' counterclaims. All defendants appealed. In a thorough opinion, 146 Ariz. 57, 703 P.2d 1206, the court of appeals reviewed the facts, defined the standard of appellate review, and held that Murdock had established its claim, that the evidence supported the damages awarded, and that attorney's fees were properly granted by the trial judge. The opinion of the court of appeals on each of these points is approved. However, the court also held that the evidence was insufficient to support any judgment against Wilbur and UI. Since the legal issues with respect to this holding are matters of first impression in this state, we granted review. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and Rule 23(c), Ariz.R.Civ.App.P., 17A A.R.S.

The precise issue presented is whether defendant may be held liable on a quantum meruit theory to make restitution for benefits received when defendant was neither a party to the contract under which plaintiff rendered services nor a party responsible for the wrong which permitted plaintiff to rescind the contract and seek restitution.

## FACTS

The facts are fully set out in the opinion of the court of appeals and need not be repeated here. Although the case took three months to try and was fraught with considerable factual controversy, the facts relating to the narrow issue upon which we have taken review are not in dispute. So far as necessary to understand the issue before us, the facts are as follows:

Pearson had entered into an agreement with a landowner to construct a shopping center in Flagstaff. A great deal of excavation and site preparation on the property was necessary and required the blasting of a large quantity of rock. Pearson approached Murdock, asking it to bid on a subcontract for the site work. Murdock decided not to bid on the job because it did not have time to estimate the quantities of rock to be blasted. A Pearson employee then provided Murdock with figures regarding the quantity of rock to be blasted. According to the version of the facts accepted by the trial jury and the trial judge, the figures given Murdock were erroneous. Instead of blasting 34,000 cubic yards of rock, which was the figure upon which Murdock relied in making its bid, Murdock had to blast a total of over 52,000 cubic yards.

The misrepresentations with regard to the quantity of rock to be blasted were made prior to July 27, 1977. The contract between Pearson and Murdock was made on July 27. In August of 1977 Pearson formed a joint venture with Wilbur[2] for performance of Pearson's contract to develop and construct the shopping center. In November Murdock discovered that its blasting operation had exceeded by 18,000 yards the estimate provided by the Pearson employee. Additional blasting would be required to complete the subcontract. On November 14, 1977 Murdock asked Pearson for assurance that it would be paid for blasting the excess rock. When Pearson refused, Murdock left the job and filed the

1. See Rules 39(a)(2) and 39(k), Ariz.R.Civ.P., 16 A.R.S.

2. As noted by the court of appeals (at p. 1212, n. 4), the letter agreement which memorializes the joint venture was between Pearson and Wilbur. UI is not mentioned. Neither Wilbur's relationship with UI nor UI's relationship with the joint venture is clear in the record or adequately explained by the parties.

legal action. At trial Murdock elected to rescind the contract and recover in equity. The trial court entered judgment for restitution against all defendants.

■ In reversing the judgment against Wilbur and UI, the court of appeals held "as a matter of law, that no joint venture existed on ... the date of the misrepresentation." (P. 1213.) The court also held that the evidence did not support the theory that Wilbur and UI had become liable by ratifying the misrepresentation. Pointing out that liability through ratification must be supported by evidence that the defendant has "full" and "actual" knowledge of the misrepresentation, the court held the record insufficient to establish that Wilbur and UI had the requisite knowledge to adopt or ratify the unauthorized representations made to Murdock by Pearson employees before the formation of the joint venture. The court thus concluded that Wilbur and UI "are not liable for the ... misrepresentation of Taylor Pearson, and that their motions for directed verdicts should have been granted by the trial court." [3] (*Id.* at 1213.) We agree with the court of appeals' conclusions regarding the ultimate facts. The record does establish that the joint venture was formed after the misrepresentation. Also, the evidence fails to establish that those misrepresentations were later ratified by Wilbur and UI. Thus, it follows that the latter were not "liable for the ... misrepresentation of Taylor Pearson." (Id.)

## THE NATURE OF THE CLAIM FOR RESTITUTION

■ We start with the premise that Wilbur and UI are neither liable nor responsible for the tort of fraud nor for any misrepresentation by Pearson. They neither made, authorized, nor ratified any misrepresentation. Nor are they liable for breach of contract, since they neither made, authorized, nor ratified the contract between Murdock and Pearson. In addition, Murdock waived all contract claims. Thus, the judgment against Wilbur and UI cannot be supported on either tort or contract theory. In fact, that judgment was not based on either theory but, instead, on the theory of quantum meruit—restitution made for benefits received. We must determine, therefore, whether a party which has not participated in the tort that caused the damage to the plaintiffs and has breached no contractual obligations to the plaintiff may, nevertheless, be held liable to the plaintiff on the theory of quantum meruit.

Restitution began as an ancient remedy to enforce contractual rights which could not be enforced in common law courts due to lack of formality of the contract. *D. Dobbs, Remedies* § 4.2 at 233 (1973). Various forms of action evolved to permit recovery of goods or money on contracts implied in fact—that is, those which the law implied from the conduct of the party rather than from any explicit words. *Id.* at 234. Eventually, restitution theory permitted an action to be brought where there was no contract at all, "neither expressed nor implied in fact." *Id.* at 235. The purpose of such an action was to prevent unjust enrichment of the defendant, and one of the explicit forms of action recognized for that purpose was the so-called quantum meruit action.[4] *Id.* at 235–37.

Thus, quantum meruit was the common law count or form of action which allowed recovery where the plaintiff had performed services for the defendant, whether the services were provided at the defendant's request, on a theory of implied-in-fact contract, or without the defendant's request but benefiting him in some way. *D. Dobbs, supra,* § 4.2 at 237. The recovery allowed for services which had not been requested by defendant was based upon quasi-contract, and theoretically had as its "central core" the "principle against unjust enrich-

---

**3.** If the jury was advisory only, as was later held by the trial court, the proper relief if the evidence was insufficient would be by motion to dismiss. Rule 41(b), Ariz.R.Civ.P., 16 A.R.S.

**4.** "Quantum meruit" literally means "as much as he deserves." *Black's Law Dictionary* 1119 (5th ed. 1979).

ment." *Id.* at 236. This principle has been adopted by the American Law Institute, which has stated: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement of Restitution § 1.

These concepts are a part of Arizona jurisprudence. We have held a defendant liable, on the theory of restitution, for benefits resulting from unauthorized use of plaintiff's property. *Artukovich & Sons v. Reliance Truck Co.*, 126 Ariz. 246, 614 P.2d 327 (1980). We allowed recovery even though plaintiff had suffered no damage, because defendant had been unjustly enriched by receiving the benefits flowing from the use of plaintiff's property and it would have been "inequitable" to have allowed defendant to retain such benefits without compensating plaintiff. *Id.* at 248, 614 P.2d at 329. Our court of appeals subsequently held that a former wife who had provided the funds necessary for her husband's medical education was entitled, upon divorce, to restitution in quantum meruit to prevent the husband's unjust enrichment resulting from obtaining his education with funds received through his wife's efforts. Noting that the availability of restitutionary relief is not dependent upon the existence of a valid contract between the parties, the court stated:

> In order to be granted restitution, [plaintiff] must demonstrate that [defendant] received a benefit, that by receipt of that benefit [defendant] was unjustly enriched at [plaintiff's] expense, and that the circumstances were such that in good conscience [defendant] should make compensation.

*Pyeatte v. Pyeatte*, 135 Ariz. 346, 352, 661 P.2d 196, 202 (App.1983). Thus, prior case law indicates that a party may be liable to make restitution for benefits received, even though he has committed no tort and is not contractually obligated to the plaintiff.

 The circumstances of this case are somewhat unique. Neither party has cited a case factually on point, and our research discloses none. The Restatement of Restitution contains several sections dealing with the availability of restitution in quantum meruit to those who, without enforceable contracts, have rendered services that enure to the benefit of another. Section 40 specifies when restitution is available, but does not cover the factual circumstances present in the case at bench. Section 41 lists the circumstances under which no recovery is available, but also does not cover the circumstances presented by the case at bench. This is not determinative, however, because the remedy of restitution is not confined to any particular circumstance or set of facts. It is, rather, a flexible, equitable remedy available whenever the court finds that "the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity" to make compensation for benefits received. *D. Dobbs, supra*, at 235, quoting *Moses v. MacFerlan*, 2 Burr. 1005, 97 Eng. Rep. 676 (K.B.1760).

## IS RESTITUTION APPROPRIATE IN THIS CASE?

 We have also recognized the rationale for restitutionary relief, stating that restitution through an implied-in-law contract or quasi-contract is available "as a matter of reason and justice from the acts and conduct of the parties and circumstances surrounding the transactions, ... and [is] imposed for the purpose of bringing about justice without reference to the intentions of the parties." *Artukovich & Sons v. Reliance Truck Co.*, 126 Ariz. at 248, 614 P.2d at 329. Since we are not bound by the common law forms of action and are free to fashion a remedy wherever circumstances and equity require (*D. Dobbs, supra*, at 239), our question is simply whether under the facts of this case Wilbur and UI received a benefit and whether it is unjust that they retain that benefit without being required to compensate plaintiff for the value received. In the case at bench, Murdock provided valuable services by way of site preparation. Presumably, the construction of the shopping center would not have been possible without the blasting and other work done by

**54**

the plaintiff. Wilbur had become a joint venturer with Pearson, so that he had assumed,[5] with Pearson, the obligation of constructing the shopping center. As a joint venturer on the contract for construction of the shopping center, Wilbur must have been aware that plaintiff, or someone else, would have to perform the site preparation work. Thus, Murdock's work was beneficial to Wilbur and UI because it was necessary for performance of the contract to construct the shopping center. "A benefit may be any type of advantage, including that which saves the recipient from any loss or expense." *Pyeatte v. Pyeatte*, 135 Ariz. at 352, 661 P.2d at 202, citing *Artukovich, supra*.

However, the mere receipt of a benefit is insufficient. Restitutionary relief is allowable only when it would be inequitable or unjust for defendant to retain the benefit without compensating plaintiff. *Pyeatte v. Pyeatte*, 135 Ariz. at 353, 661 P.2d at 196. In determining whether it would be unjust to allow the retention of benefits without compensation, a court need not find that the defendant intended to compensate the plaintiff for the services rendered or that the plaintiff intended that the defendant be the party to make compensation. This is because the duty to compensate for unjust enrichment is an obligation implied by law without reference to the intention of the parties. 1 *S. Williston, Contracts* § 3A at 13 (3rd. ed. 1957). What is important is that it be shown that it was not intended or expected that the services be rendered or the benefit conferred gratuitously, and that the benefit was not "conferred officiously." *Pyeatte v. Pyeatte*, 135 Ariz. at 353, 661 P.2d at

203, citing *Osborn v. Boeing Airplane Co.*, 309 F.2d 99, 102 (9th Cir.1962).

We believe that the uncontroverted facts here show that restitution is appropriate. Plaintiff did not render services gratuitously or officiously, but pursuant to a contract and with the expectation of compensation for its work. The work performed by plaintiff not only benefited Wilbur and UI but was necessary for the performance of the prime contract, a matter in which Wilbur had a direct pecuniary interest. Here, as in *Pyeatte, supra*, although there was no enforceable contract between plaintiff and defendant, plaintiff's contract "has importance in considering [the] claim for unjust enrichment because it both evidences [plaintiff's] expectation of compensation and the circumstances which make it unjust to allow [defendant] to retain the benefits...." *Pyeatte v. Pyeatte*, 135 Ariz. at 353, 661 P.2d at 203. We hold, therefore, that the judgment for restitution is supported by this record.

### THE JOINT VENTURERS

Two further questions remain. The first involves the identity of the joint venturers. The trial judge evidently took the position that both Wilbur and UI were joint venturers. As indicated above (note 1, *ante*), the letter agreement does not mention UI. Also, as noted by the court of appeals, the record is not clear on UI's relationship with Wilbur or Pearson. We cannot tell the basis for the trial court's entry of judgment against UI, and we refuse to speculate. Judgment against UI does not appear to have been an important issue in the case, is not explained by any specific finding or minute entry, and is difficult to affirm on the state of the

---

5. We do not use the word "assumed" in its technical, legal sense. The letter agreement of August 27 provides that Wilbur "will acquire a 40% interest in the project." The "project," from Pearson's standpoint, consisted of its obligations and expected benefits from performance of its prime contract with the owner. Under the terms of the letter agreement, Wilbur's contribution to performance of that contract mainly consisted of advancing cash to help Pearson meet payroll, equipment costs, and purchases of materials. Wilbur was also to obtain the performance bond required by the prime contract. Whether or not Wilbur actually assumed and was liable to the owner for Pearson's performance of the prime contract is open to question. What is certain, however, is that Wilbur had a direct and real pecuniary interest in Pearson's successful performance of the prime contract, stood to gain from its performance and to lose from its nonperformance.

record. We are equally hesitant to reverse without knowing what the trial judge had in mind. Since the case must be remanded for other reasons, we leave it to the trial judge to consider the record and determine the liability of UI under principles of restitution.

## DAMAGES

■ The final issue, and that which requires remand, pertains to the question of damages. In pertinent part, the trial judge instructed the jury as follows:

> If a person is damaged by the *misrepresentation* of another, ... that person is entitled to recover, in addition to his compensation under quantum meruit, such other additional damages as might be required to make him whole. These damages must have been reasonably and necessarily incurred under the circumstances.

(Emphasis supplied.) This instruction is incorrect as applied to Wilbur, since Wilbur is not liable for the misrepresentation. Of course, part of the error was cured when the trial judge reduced the damages awarded by the jury, deeming its verdict to have been only advisory. The record does not explain the trial judge's calculations in making the reduction from $392,000, except that he evidently reached it by adding a profit factor to Murdock's total costs and subtracting the money paid to Murdock by Pearson (slip op. at 16). Assuming that this was the formulation used by the trial judge, it is still erroneous as to Wilbur, even though correct as to Pearson. This is because the amount of recovery should correspond to the reasons underlying that recovery. *D. Dobbs, supra*, § 4.5 at 260.

> If there is any one rational principle that might be used to guide restitutionary measurements it is that the measure of restitution should reflect the substantive law purposes that call for restitution in the first place. If the plaintiff built the house on defendant's land by mistake, he may be entitled to restitution for the benefits conferred, but perhaps only for the actual, subjective benefit to the de-

fendant. On the other hand, if the defendant bargained for the house and it was built pursuant to an agreement voidable for mistake ..., perhaps the benefit to the defendant should be measured by the market value of the plaintiff's labor and supplies. If the plaintiff built the house ... because he had an oral contract to buy the land that was later repudiated by the defendant, [recovery might be limited to] the increased value of the defendant's land by reason of the building.

*Id.* at 260–61 (footnotes omitted).

■ The case at bench presents a clear instance of restitutionary recovery from different defendants based upon different legal principles. Recovery against Pearson is allowed on the basis that Pearson's misrepresentation allowed Murdock both to rescind and to recover the market value of labor and materials, the reasonable cost of its work, and a reasonable profit margin as an element of the reasonable value of the services. (703 P.2d at 1216–1217.) Wilbur, however, is in a different category. He is not responsible for the misrepresentation and had no contract with Murdock. Recovery is allowed against him simply because the work performed by Murdock conferred a benefit on Wilbur which equity will not allow him to retain without payment.

■ Where there is no contract between the parties, and none attempted, the benefit to the recipient is generally measured by its economic value to him. *D. Dobbs, supra*, § 4.5 at 261–62. However, it has also been recognized that where the recipient has requested the services, he may be held liable for their value "as services." *Id.* at 263. Other formulations are mentioned by Professor Dobbs and the Restatement as being appropriate, depending upon the peculiar factual situation of each case. We do not believe it appropriate for this court to require the trial judge to adopt any particular measure of damages. Since the trial judge proceeded upon a measure of damages that was appropriate for Pearson but inappropriate for Wilbur, we

have no way of knowing what particular factors he might find in the evidence upon which to base the proper, equitable measure of restitution. Accordingly, we remand with instructions that the trial judge reconsider the measure of restitution as to Wilbur and apply the measure of damages appropriate under whatever facts he may find to exist.

The judgment is reversed in part and affirmed in part. The opinion of the court of appeals is approved except with respect to the liability of Wilbur and UI. The case is remanded for further proceedings not inconsistent with this opinion.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.