739 P.2d 1373

STATE of Arizona, S. David Childers as Director of Insurance of the State of Arizona and as Receiver of Common Market Employee Benefit Association, Plaintiff-Appellant,

v.

ARIZONA PENSION PLANNING, Marvin L. Bates, Ray E. Bingham, Robert E. Bolt, Robert L. Bothwell, Robert K. Bowden, Brokers Consulting Service, George Casey, John G. Dunn, Kenneth M. Einhorn, Nickoel C. Elam, Grant Elford, Morris H. Fausett, Theo Hunsaker, Alva O. Jensen, James Killebrew, W.L. Laney, Robert Lear, Raymond E. Lekawa, Richard Leopold, Paula Lindsey, Thomas J. Miller, Jerry Moyes, Ron Moyes, Richard Ryan, Securance Marketing Corp., James Sheffer, Shields Co., Ltd., Edward A. Shields, and Tessier & Associates, John Doe 1–100, Jane Doe 1–100, Black Corporation 1–100 and White Corporation 1–100, Defendants-Appellees.

No. CV–86–0441–PR.

Supreme Court of Arizona, En Banc.

June 25, 1987.

Robert K. Corbin, Atty. Gen. by Susan J. Gallinger, Asst. Atty. Gen., Meyer, Hendricks, Victor, Osborn & Maledon, P.A. by Ron Kilgard, Andrew D. Hurwitz, Phoenix, for plaintiff-appellant.

Weltsch, Santerre, Vande Krol & Green, Ltd. by Scott R. Santerre, Scottsdale, for defendant-appellee Arizona Pension Planning.

Kunz & Waugh, Ltd. by Donald R. Kunz, Phoenix, for defendants-appellees Bingham, Bolt, Bowden, and Brokers Consulting Service.

Donald P. Roelke, Beer & Toone by Douglas H. Fitch, Phoenix, for defendant-appellee Einhorn.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.C. by Scott E. Boehm, Larry L. Smith, Harding B. Cure, Catherine M. Jones, Phoenix, for defendants-appellees Miller and Securance Marketing Corp.

Carmichael, McClue & Powell by Sidney G. McClue, Jr., Sid A. Horwitz, Phoenix, for defendants-appellees Moyes.

Ronald W. Meyer, Phoenix, for defendant-appellee Ryan.

FELDMAN, Vice Chief Justice.

The State Director of Insurance (Director) petitioned us to review a court of appeals' decision affirming summary judgment in favor of agents of an insolvent, unauthorized insurance company. *State v. Arizona Pension Planning*, 154 Ariz. 52, 739 P.2d 1369 (Ct.App.1986). The Director seeks to enforce the rights of numerous insureds to recover the sales commissions that the insurer paid to its agents, together with the full amount of any valid policy claims dishonored by the insurer. We granted the petition to consider the scope of the Director's authority. Rule 23(c)(4), Ariz. R.Civ.App.P., 17A A.R.S. (Supp.1986). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## I. FACTS

Common Market Employment Benefit Association (Common Market) was formed as an unincorporated association in December 1975. It was to function as an "ERISA"—an organization providing insurance-type medical benefits to its members pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* Under federal law, a true ERISA is not subject to state insurance regulation. 29 U.S.C. § 1144(a).

In 1976, the Arizona Director of Insurance concluded that Common Market was not a true ERISA. The Director therefore brought an action alleging that Common Market was an unauthorized, illegal insurance company and sought an injunction preventing Common Market from transacting further business in Arizona. *See* A.R.S. §§ 20–206, –401.01, –401.02. Common Market eventually stipulated to the injunction and to the appointment of a con-

servator to oversee its affairs.[1] In 1978, the conservator requested that Common Market be liquidated. The superior court subsequently appointed the Director as receiver of Common Market for the purpose of liquidation.

In October 1978, the Director filed two actions in an effort to obtain funds for the benefit of Common Market's insureds and creditors. One of the actions sought recovery from Common Market's agents of all commissions received for selling Common Market insurance. This action was based on an "unjust enrichment" theory. *See Murdock-Bryant Construction, Inc. v. Pearson*, 146 Ariz. 48, 703 P.2d 1197 (1985). The second action sought to hold certain agents liable to their insureds for valid unpaid claims on Common Market policies sold by those agents. *See* A.R.S. § 20–402(B). We refer to these actions as the "commissions action" and the "claims action" respectively.

After the cases against Common Market and its various agents were consolidated, the trial court granted summary judgment for the defendant agents. In the commissions action, the trial judge reasoned that the insureds were not entitled to a return of the commissions because their policies were legally enforceable pursuant to A.R.S. § 20–402(A). In the claims action, the trial court recognized that under A.R.S. § 20–402(B) insureds may recover valid, unpaid claims from the selling agent of an illegal insurer. The judge held, however, that the Director of Insurance lacks authority as either Director or receiver to enforce the insureds' personal recovery rights.[2] The court of appeals affirmed.

## II. THE AGENTS' LIABILITY

### A. *The Commissions Action*

■ The Director's commissions action is based solely on the theory of unjust enrichment. That theory provides for the "flexible, equitable remedy" of restitution "whenever the court finds that 'the defendant, upon the circumstances of the case, is obliged by the ties of natural justice and equity' to make compensation for benefits received." *Murdock-Bryant*, 146 Ariz. at 53, 703 P.2d at 1202 (quoting D. DOBBS, REMEDIES § 4.2, at 435 (1973)); *accord City of Sierra Vista v. Cochise Enterprises, Inc.*, 144 Ariz. 375, 381, 697 P.2d 1125, 1131 (App.1985); *Pyeatte v. Pyeatte*, 135 Ariz. 346, 352–53, 661 P.2d 196, 202–03 (App.1982). Restitution is appropriate in this case, the Director argues, because the agents' commissions were generated by illegal sales of a worthless product. The agents have their commissions, paid out of premium payments made by the insureds, while the insureds have only worthless paper.

The court of appeals rejected the Director's argument. The court reasoned that the "policies are not 'worthless,'" because "Common Market insureds enjoy fully enforceable rights, as creditors of Common Market, to recover claims they file with the receiver." 154 Ariz. at 55, 739 P.2d at 1372. Furthermore, the court added, the agents are entitled to their commissions because they sold the policies in good faith,[3] without "previous notice that Com-

---

1. The stipulation preserved all of Common Market's defenses and neither admitted nor denied the allegations in the Director's complaint. Like the proceedings below, therefore, this opinion proceeds on the as yet untested assumption that Common Market is not a "true" ERISA.

2. The trial judge actually stated that the Director lacked "standing" to sue on behalf of the insureds. In context, however, it appears that the judge used "standing" interchangeably with "authority." In Arizona, there is no case or controversy requirement; standing is merely a doctrine of judicial restraint. It is "imposed to ensure that courts do not issue mere advisory opinions, that the case is not moot and that the issues will be fully developed by true adver-

saries." *In re Strobel*, 149 Ariz. 213, 216, 717 P.2d 892, 895 (1986). These concerns are satisfied in this case. We therefore limit our inquiry, as did the court of appeals, to whether the Director had legal authority to bring these actions.

3. In the court of appeals, there was some question raised as to whether the agents acted in good faith. Because this issue may have arisen late in the case and was not argued in the briefs, we have proceeded on the *assumption* that the agents were acting in good faith. If the issue is open and if bad faith is established, then our conclusions on every issue decided in this opinion would weigh even more heavily in favor of the insureds.

mon Market was an unauthorized insurance company." 154 Ariz. at 55, 739 P.2d at 1372.

It is true, as the court of appeals pointed out, that under A.R.S. § 20–402(A), Common Market's status as an illegal insurer does "not impair the validity" of Common Market's policies. 154 Ariz. at 55, 739 P.2d at 1372. In theory, Common Market's policies are still effective and its insureds can enforce their rights as creditors in the liquidation proceedings.

This theoretical right to recovery, however, does not defeat the insureds' right to restitution in this case. First, although Common Market's policies are technically valid, in reality they are worthless. Policy benefits remain unpaid; Common Market has not and cannot honor its policies. In this situation, § 20–402(A)'s guarantee is largely meaningless. Consequently, the insureds' right to stand in line with other creditors is no reason to curtail the insureds' right to seek restitution from their agents.

Second, the insurance code is designed primarily to protect consumers, not insurers or their agents. 1980 Ariz.Sess.Laws, Ch. 230, § 1 ("The objectives of the department of insurance are to ... protect the citizens of this state who purchase insurance....") (cited as a historical note to A.R.S. § 20–101 (Supp.1986)). Section 20–402(A), for example, protects insureds by preventing unauthorized insurers from rescinding or voiding their policies. If the insurer is solvent, this statutory validation of the insured's policy should provide adequate protection against unauthorized and therefore illegal insurers. If insureds are unable to actually recover their claims pursuant to subsection (A), however, subsection (B) allows insureds to sue their *agents* for the full amount of any valid, unpaid claims. Significantly, subsection (B) allows recovery from the agent who sold the policy even if the sale was made in good faith and even though the policy is technically effective.

The clear objective of the insurance code in general and § 20–402 in particular is to protect consumers from unauthorized insurers, even at the expense of agents who, in good faith, sold illegal policies. Requiring restitution in this case is consistent with this objective. In our view, the legislature that imposed personal liability for payment of claims on the agents who sold illegal policies could not have intended that those same agents be allowed to profit by retaining the sales commissions generated by the premiums paid for those illegal policies.

Finally, common sense dictates that the insureds should be allowed to seek restitution of the commissions generated by *their* premiums. We recognize, of course, that an agent ordinarily earns his commission when a policy is sold and that the insurer's later insolvency usually does not operate retroactively to forfeit the agent's commission. *See Arizona Insurance Guaranty Association v. Humphrey*, 109 Ariz. 284, 286, 508 P.2d 1146, 1148 (1973). However, the case before us is not comparable to an agent's sale of a legal policy issued by an authorized insurer. Where, as here, the insureds purchased illegal policies and the insurer is both unauthorized and insolvent, it is disingenuous to argue that the insurer earned its premiums or that the agents earned the commissions paid from those premiums. Although the agents may have done everything necessary to "earn" their commissions *from the insurer*, those commissions were paid from premiums engendered by an illegal, unauthorized transaction. Given the insurer's insolvency, those premiums purchased no benefits for the insureds. As between the agents and the insureds, therefore, the commissions generated by the insureds' premiums were clearly "unearned."

It makes no difference that the agents may have sold the policies in good faith. Restitution is " 'imposed for the purpose of bringing about justice without reference to the intentions of the parties.' " *Murdock-Bryant*, 146 Ariz. at 53, 703 P.2d at 1202 (quoting *Artukovich & Sons v. Reliance Truck Co.*, 126 Ariz. 246, 248, 614 P.2d 327, 329 (1980)). The otherwise vague or arguable concept of "justice" is made clear here by a legislative policy to protect consumer

interests over the interests of illegal insurers and their agents, innocent or not.

We hold that as between the agents and the insureds, the agents are not entitled to retain commissions "earned" from premiums paid for an illegal and worthless product. To the extent that they retain such commissions, they have been unjustly enriched and are liable to make restitution to the insureds.

### B. *Claims Action*

When the Director filed the unpaid claims action, A.R.S. § 20–402(B) provided:

In the event of failure of any such unauthorized insurer to pay any claim or loss within the provisions of such insurance contract, any person who acted directly or indirectly as an agent for or otherwise represented or aided the insurer in the solicitation, negotiation, procurement or effectuation of such insurance contract or renewal thereof *shall be liable to the insured for the full amount of the claim or loss* in the manner provided by the provisions of such insurance contract.

(emphasis added). As the court of appeals acknowledged, § 20–402(B) makes the agents liable to their insureds for the full amount of any unpaid claims. 154 Ariz. at 55, 739 P.2d at 1372. *See generally* 16A J. APPLEMAN, INSURANCE LAW AND PRACTICE § 8834, at 50–60 (1982).

### III. THE DIRECTOR'S AUTHORITY

### A. *The Director's Authority as Receiver*

As receiver, the Director has authority to recover Common Market's property for the benefit of its creditors, including its insureds. 19A J. APPLEMAN, *supra* § 10692, at 131–38; 2A M. RHODES, COUCH ON INSURANCE § 22:44, at 624 (rev. ed. 1984). If he is seeking to recover the insurer's assets, the Director may step into the insureds' shoes and assert the insureds' rights. 2A M. RHODES, *supra* § 22:44; 3 R. CLARK, A TREATISE ON THE LAW AND PRACTICE OF RECEIV-

ERS § 765 (3d ed. 1959). Thus, if the agents' liability for the commissions and the unpaid claims that the Director seeks to recover are assets of Common Market, the Director has authority as receiver to prosecute these actions. *See, e.g., Robertson v. Malone,* 190 F.2d 756 (5th Cir.1951) (receiver may sue agents to recover *unearned* premiums); *United Benefit Fire Insurance Co. v. Earl,* 186 Neb. 175, 181 N.W.2d 841 (1970) (*unearned* premiums and commissions are held by agents in a fiduciary capacity and may be recovered in liquidation proceedings).

The court of appeals held that the Director lacked authority to prosecute the claims action as Common Market's receiver because "[t]he rights created by § 20–402(B) belong solely to the insureds and *do not constitute an asset of Common Market.*" 154 Ariz. at 55, 739 P.2d at 1372 (emphasis added). Although the court of appeals did not discuss whether the commissions were recoverable as assets of Common Market, the same analysis obviously is applicable. Absent "an agreement to the contrary, [the] agent[s'] commission[s were] earned [4] at the time the[ir] customer[s were] insured by" Common Market. *Humphrey,* 109 Ariz. at 286, 508 P.2d at 1148 (footnote added). Once the commissions were earned, they were no longer part of Common Market's assets; consequently, under the court of appeals' analysis, the Director lacks authority in his capacity as receiver to recover the commissions in a liquidation proceeding.

■ We agree that because neither the unpaid claims nor the commissions are the insurer's property, the Director, in his capacity as receiver, lacks authority to assert the insureds' rights. 154 Ariz. at 55, 739 P.2d at 1372; *see also* 19A J. APPLEMAN, *supra* § 10681, at 117–18. Significant considerations of public policy persuade us, however, that the Director has sufficient authority as Director of Insurance to prosecute this action.

---

**4.** As we noted *ante,* the agents did not "earn," in any realistic sense, their commissions from the insureds. The agents apparently did, however, do everything necessary to earn their commissions from Common Market.

## B. *The Director's Authority as Director of Insurance*

As we explained *ante*, the insurance code was adopted to protect consumers, not agents. *See* A.R.S. § 20–106 (Supp.1986) (historical note). Section 20–402 protects insureds who purchase insurance from unauthorized insurers by allowing insureds to enforce their policies against the insurer, and, if necessary, against the insured's agent. The clear objective is to allow insureds every opportunity to recover valid claims on policies sold by unauthorized insurers. This legislative objective would be frustrated by a requirement that each insured must sue his agent separately. If individual suits are required, many claims will go unpaid simply because they may not be large enough to make legal action economically available. This case is a good example: the average claim for medical benefits is only $632.89, and, although numerous insureds have filed claims with the Director, none has filed suit against their agent. Similarly, the value of each insured's commissions claim is almost certainly too small to justify separate lawsuits. In reality, therefore, the insureds' rights to restitution and to recovery under § 20–402(B) often will be empty promises if each insured must pursue his own claim for recovery of commissions or policy benefits. Further, requiring each insured to pursue separate actions would cause undue burden and expense to the judicial system. Thus, if the Director cannot bring the actions, there is no practical method of vindicating the consumers' rights.

In our view, the Director has sufficient authority to remedy this situation by filing one lawsuit against all the agents. The insurance code states an objective; it does not limit the means by which the Director and the courts can work to achieve that objective. Indeed, the code establishes a clear legislative intent to vest the Director and the superior courts with power and authority *"reasonably implied* from the provisions of [title 20]...." A.R.S. § 20–142(B) (Supp.1986) (emphasis added); *see also* A.R.S. § 20–612. We hold that this grant of implied power is broad enough to authorize the Director to fairly and efficiently enforce the insureds' right to recover valid claims for policy benefits and commissions from their agents. It is only by such a construction that the legislative objectives can be attained.

A single, unified action by the Director is particularly appropriate in this case because Common Market is being liquidated. Liquidation proceedings require all claims against the insurer to be filed with the receiver, A.R.S. § 20–628(A), and prevent individual actions against the insurer, A.R.S. § 20–630. In this situation, it makes sense to allow the Director to consolidate all the claims against the insurer and its agents in a single action. Because the doctrine of unjust enrichment and § 20–402(B) essentially impose strict liability on the agents once a valid commission or policy claim is established, it is difficult to see what can be gained by numerous individual actions. The superior court is capable of tracking the insureds' claims and ordering "relief as the nature of the case and the interests of policyholders, creditors, ... or the public requires." A.R.S. § 20–613.

## IV. OFFSET AND ATTORNEY'S FEES

Although not raised by the parties, it is appropriate to inquire whether an insured may recover from his agent both the unearned commission and the total amount of the insured's claim under his policy. Assuming, again, that the agents acted in good faith, we believe that to allow such a double recovery in cases where an insured has both a claim for restitution and for policy benefits would unfairly benefit the insured at the agent's expense. In those cases, if any, in which the insured's policy becomes truly valid and effective because the insured receives the full amount of his claim, the insured has received what he bargained for and has suffered no damage. In such cases, the agent has not been unjustly enriched and therefore should be allowed to retain his commission. If this situation arises, an appropriate offset should be allowed from the full payment of the claim.

■ The Director has requested an award of attorney's fees under A.R.S. § 12–341.01, which grants the court discretion to award fees in actions arising out of a contract. *See Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 394, 710 P.2d 1025, 1049 (1985). We exercise our discretion to deny fees because the agents' apparently acted in good faith, *but see* note 3 *ante,* and because the agents' liability for unpaid claims exists only by virtue of a statute that does not specifically authorize attorney's fees. If, on remand, the trial court finds that the agents did not act in good faith, it is within its discretion to award fees.

## V. CONCLUSION

We decide today that agents of an unauthorized, insolvent insurer may be held liable for their commissions and for the insureds' claims. We also hold that the Director has sufficient authority to bring these actions. The precautions that may be necessary to assure that the insureds' claims are valid or to protect the insureds' individual due process rights to notice of the actions are not before us.

The trial court's summary judgment is reversed and the court of appeals' opinion is vacated. This case is remanded for proceedings consistent with this opinion.

GORDON, C.J., and CAMERON and HOLOHAN, JJ., concur.

MOELLER, J., did not participate in the determination of this matter.