**CLIFTON MFG. CO. v. UNITED STATES.**

**No. 3510.**

Circuit Court of Appeals, Fourth Circuit.

April 2, 1935.

578

W. A. Sutherland, of Atlanta, Ga. (Joseph B. Brennan, Edward R. Kane, Samuel Nesbitt Evins, Sutherland, Tuttle & Brennan, and Jones, Evins, Powers & Jones, all of Atlanta, Ga., on the brief), for appellant.

Frank J. Wideman, Asst. Atty. Gen. (Sewall Key, Carlton Fox, and J. Louis Monarch, Sp. Assts. to Atty. Gen., and Charles C. Wyche, U. S. Atty., of Greenville, S. C., on the brief), for the United States.

Before PARKER and SOPER, Circuit Judges, and HAYES, District Judge.

SOPER, Circuit Judge.

Clifton Manufacturing Company, a South Carolina corporation, brought an action in the District Court under section 24 (20) of the Judicial Code, as amended by the Act of February 24, 1925, 43 Stat. 972, 28 USCA § 41 (20), for the refund of income and profit taxes for the fiscal year ending March 31, 1918, contending that the assessment and collection of the taxes, when made, were barred by the statute of limitations. The taxpayer, in its bill of complaint, prayed that certain tax waivers, executed by its officers after the period of limitations had expired, be declared void upon the ground that they had been obtained through false representations and mutual mistake. The District Judge held (3 F. Supp. 508) that the assessment and collection of the taxes were not barred, and that the waivers were valid. This court, 70 F.(2d) 102, affirmed the decree of the District Court with regard to the period of limitations, following the decisions of the Ninth Circuit in Zellerbach Paper Co. v. Helvering, 69 F.(2d) 852, and National Paper Products Co. v. Helvering, 69 F.(2d) 857; but the Supreme Court, Zellerbach Paper Co. v. Helvering, 293 U. S. 172, 183, 186, 55 S. Ct. 127, 79 L. Ed. ——, reversed the decrees in these cases and remanded the pending case to this court in order that the question of the validity of the waivers might be determined.

The taxpayer filed its return on May 27, 1918, under the Revenue Act of 1917 (40 Stat. 300), for the fiscal year ending March 31, 1918, showing a tax liability of $171,002.96. The Revenue Act of 1918, 40 Stat. 1057, became a law on February 24, 1919, with retroactive provisions as of January 1, 1918; and thereafter, to wit, on April 29, 1919, the taxpayer filed an additional return for the same period showing an additional tax liability of $50,638.75, which was duly paid. On May 25, 1926, another assessment was made, setting forth an additional deficiency amounting, with interest, to $38,488.07, which the taxpayer paid under protest on October 15, 1926. This last-mentioned assessment, the Supreme Court said, was levied after the expiration of the five-year period of limitations, provided by section 250 .(d) of the Revenue Act of 1918 (40 Stat. 1057, 1083), holding that the period should be computed from May 28, 1918, the date of the first return, and not from April 29, 1919, the date of the additional return. On September 24, 1926, after the expiration of the period of limitations as determined by the Supreme Court, the Collector of Internal Revenue demanded the payment of $130,777.27, being the amount, with interest, of an assessment made in May, 1921, and the taxpayer paid this sum under protest on October 15, 1926. With reference to a large part of the sum so paid, a claim in abatement was filed in July, 1921. It is agreed that the filing of this claim in abatement precludes a recovery of so much of the taxes as was covered by the claim, and that if the taxpayer is entitled to recover at all in this case, the judgment should be for $57,265.76, with interest from October 15, 1926.

On June 25, 1923, more than five years after the first return, the taxpayer executed a waiver effective for one year from date, wherein it consented to a determination, assessment, and collection of the taxes for the year 1918, under section 250 (d) of the Revenue Act of 1921, 42 Stat. 227, 265. Thereafter, other waivers were executed on January 19, 1924, December 4, 1924, and November 18, 1925, at which time the Revenue Act of 1924, 43 Stat. 253, was in effect, containing similar provisions as to waivers in sections 277 (a) (3) and 278 (c), 26 USCA §§ 1057 (a) (3), 1060 note.

The taxpayer contends that under these facts, the waivers were without validity. It is not disputed that at the time they were executed, both the officers of the taxpayer and the Commissioner were under the impression that the statutory period of limitations had not expired, and that other-

wise the waivers would neither have been requested nor given. The first waiver was given in response to a letter of the Commissioner of June 21, 1923, which, referring to a proposed additional assessment for the year 1918, requested that the form of waiver inclosed be executed and returned, in order that the interests of the United States might not be jeopardized pending the consideration of a brief of the taxpayer filed on March 5, 1923. It is contended that this letter involved the misrepresentation, on the part of the United States, that the period of limitations had not expired, whereby the taxpayer was misled, and executed the waivers under a mistake of law; or, if this view is not tenable, that the waivers were executed under a mutual mistake in respect to the taxpayer's antecedent and existing legal rights; and finally, that the waivers were given in ignorance of the right said to have been waived. If any of these grounds can be sustained, it is argued that the waivers were invalid and should be canceled.

We are unable to reach the conclusion that the statements in the Commissioner's letter amounted to such a misrepresentation as to entitle the taxpayer to cancellation. The taxpayer relies on the statement of the rule laid down in Pomeroy's Equity Jurisprudence, § 847, and in Williston on Contracts, § 1591, to the general effect that where a mistake of one party as to the legal effect of a transaction is induced, procured, aided, or accompanied by inequitable conduct of the other party, even though no fraud or deception is intended, equitable relief will be granted. In the pending case, the request of the Commissioner, that the first waiver be executed in order that the interests of the government might not be prejudiced pending the consideration of the taxpayer's brief, implied that the period of limitations had not then expired; but this letter was innocently written, for not only the taxpayer, but also the officials of the government, were under the belief that an assessment and collection of the tax could still legally be made. The letter did not contain any incorrect statement as to the time when the return was filed, or as to any other fact entering into a calculation of the period of limitation. The taxpayer had precisely the same knowledge of all the relevant facts as the government itself; and there was no circumstance, such as a lack of knowledge on the part of the taxpayer as to the filing

date of the return, leading it to rely on the government's request as an assertion that the period of limitations had not expired. The case of Panther Rubber Mfg. Co. v. Commissioner (C. C. A.) 45 F.(2d) 314, upon which the taxpayer relies, turns on such a fact.

■ It is settled beyond possibility of dispute that a waiver given under section 250 (d) of the Revenue Act of 1921 is not invalid merely because it was executed after the expiration of the period of limitations. Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335; Burnet v. Chicago Railway Equipment Co., 282 U. S. 295, 299, 51 S. Ct. 137, 75 L. Ed. 349; W. P. Brown & Sons Lumber Co. v. Burnet, 282 U. S. 283, 287, 51 S. Ct. 140, 75 L. Ed. 343; McDonnell v. United States, 288 U. S. 420, 53 S. Ct. 410, 77 L. Ed. 869; Helvering v. Newport Co., 291 U. S. 485, 488, 54 S. Ct. 480, 78 L. Ed. 929. The waivers in the pending case were therefore not ineffectual simply because they were executed too late. Moreover, the belief, on the part of the Commissioner, that the period ran from the filing of the supplemental rather than from the filing of the original return, was not unreasonable, in view of the diversity of opinion amongst the courts themselves when the question reached them, the Fifth, Sixth and Eighth circuits entertaining one opinion, and the Fourth and Ninth circuits another. See Zellerbach v. United States, 293 U. S. 172, 176, 55 S. Ct. 127, 79 L. Ed. ——. The Commissioner was guilty of no inequitable or unfair conduct in requesting the waiver; on the contrary, it was entirely proper for him to request and obtain it in the absence of a final determination that the collection of the deficiency was barred. Burnet v. Chicago Railway Equipment Co., 282 U. S. 295, 303, 51 S. Ct. 137, 75 L. Ed. 349.

Hence the suggestion that there was misrepresentation attended by inequitable conduct on the part of the Commissioner must fail; but the taxpayer further contends that if this view is taken, the transaction was entered into under a mutual mistake of law, giving ground for equitable relief, since the private existing legal rights of the taxpayer were concerned. The difficulty of dealing with the effect of a mistake of law is thus summarized in Williston on Contracts, § 1581: "There is no portion of the law of mistake more troublesome than that relating to mistake of

580

law. It is impossible to coordinate the cases so as to produce satisfactory results, because the rule itself distinguishing mistake of law from mistake of fact is founded on no sound principle. Ignorance of law does not excuse one who has violated a prohibition of the law from the penalties that the law imposes. This is a necessary rule not only of the law of crimes and torts, but it is generally true also that a contract forbidden by law, or a contract to do an act forbidden by law, is none the less unenforceable because the parties were ignorant of the law or made a mistake in regard to it, though this principle is not without exception. Such a rule is necessary to enforce the orders of society; but the only bearing that it has on the reformation or rescission of contracts, or the recovery of payments made under a mistake is when the contract or payment is tainted with illegality. * * * But the injustice of some of the results produced thereby (i. e. by the rule that a mistake of law affords no ground for relief), has led to an increasing number of exceptions which have to a considerable extent destroyed the rule, and often make it difficult to determine in what cases it may still be thought applicable. The only way apparent for the law on the subject to obtain uniformity and certainty is by the gradual broadening of these exceptions until they so far coalesce that courts will venture to put mistakes of law and of fact on the same footing."

Such an exception, for instance, has been firmly established in the rule that a mistake as to the meaning of an instrument which the parties have executed, is ground for reformation, although the interpretation or construction of a contract is a question of law. Philippine Sugar, etc., Co. v. Government of Phil. Islands, 247 U. S. 385, 386, 389, 38 S. Ct. 513, 62 L. Ed. 1177; Williston on Contracts, § 1585; Pomeroy, Equity Jurisprudence, 845. It is difficult to see any reasonable distinction between the basis for this rule and that for which the taxpayer here contends, namely, that where parties enter into a transaction under a mutual mistake of law as to their private rights, relief from injustice caused thereby will be granted; for, in the latter case, it may often occur that except for the mistake, the transaction would not have been undertaken at all. The Supreme Court itself has at least suggested that where the mistake relates to the existing legal rights, interests, and relation of the

parties, resulting from antecedent transactions, it may, under proper circumstances, be ground for cancellation of instruments which they have executed. Chicago, M. & St. P. R. Co. v. Des Moines Union Ry. Co., 254 U. S. 196, 218, 41 S. Ct. 81, 65 L. Ed. 219.

As to a mistake of this sort, Williston says, "Contracts," § 1589:

"An exception has been made to the rule denying relief for mistake of law governing a situation prior to the bargain, where the mistake relates to the private rights of the parties as distinguished from a mistake as to the general law. Lord Westbury, in a leading English case, took this distinction. It is said, 'Ignorantia juris haud excusat;' but in that maxim, the word 'jus' is used in the sense of denoting general law, the ordinary law of the country. But when the word 'jus' is used in the sense of denoting a private right, that maxim has no application. Private right of ownership is a matter of fact; it may be the result also of matter of law; but if parties contract under a mutual mistake and misapprehension as to their relative and respective rights, the result is, that that agreement is liable to be set aside as having proceeded upon a common mistake.

"The only merit of this distinction between private right and general law is that it enables a court of equity to give relief in a majority of cases where the parties to a transaction assumed as a basis for it a certain legal situation. Almost always such an assumption is based on a rule of law affecting the relative rights of the parties. Their mistake may be ignorance of a most fundamental principle of general law, but if the effect of that general rule is to vary their private rights, they come within the exception."

See, also, Pomeroy, Equity Jurisprudence, § 849. For cases in which this exception to the general rule as to mistakes of law has been applied, see the cases in the notes to the texts cited, and particularly Reggio v. Warren, 207 Mass. 525, 535, 93 N. E. 805, 32 L. R. A. (N. S.) 340, 20 Ann. Cas. 1244; Renard v. Clink, 91 Mich. 1, 3, 51 N. W. 692, 30 Am. St. Rep. 458; State v. Paup, 13 Ark. 129, 56 Am. Dec. 303; Stoeckle v. Rosenheim, 10 Del. Ch. 195, 87 A. 1006; Baker v. Massey, 50 Iowa, 399; Burton v. Haden, 108 Va. 51, 60 S. E. 736, 15 L. R. A. (N. S.) 1038; Cincinnati, I. & W. R. Co. v. Indianapolis Union R. Co. (C. C. A.) 36 F.(2d) 323; Blake-

more v. Blakemore, 44 S. W. 96, 19 Ky. Law Rep. 1619.

█ It will be observed, however, from an examination of the cases that in all of them relief was based upon some substantial injustice which otherwise would have occurred, as in the surrender of a valuable interest, without compensation, or the payment of money without consideration; and it may be fairly said that at the heart of the rule which permits equitable relief from the results of a mistake of law or of fact is found the fundamental principle of equity, that no one shall be allowed to enrich himself unjustly at the expense of another; or, as it has been put in England, relief from mistakes of law will be granted if there is any equitable ground that makes it, under the particular facts of the case, inequitable that the parties who receive the money should retain it. Williston on Contracts, § 1582. The real question then in the pending case is whether such injustice would result from the government's retention of the money paid by the taxpayer as would justify the cancellation of the waivers. In our opinion, the answer should be in the negative. It is of great significance that the taxpayer was in truth indebted to the United States for taxes in the amount which it paid. If it should be relieved from this payment, it would be merely because of the failure of the United States to press its claim with the promptness considered reasonable by Congress. Thus the situation differs widely from the decided cases in which a failure to rescind a transaction would have entailed an unjust enrichment of the party against whom relief was sought. Some weight may be given to the circumstance that on March 5, 1923, within the period of limitations, the taxpayer filed a brief and requested a reconsideration of its case, an action that may have contributed to the failure of the government to proceed more promptly. It is true that the Commissioner's request for a waiver did not come until after the period had expired, but proceedings to collect the tax may well have been taken within the statutory period had the delay occasioned by the filing of the taxpayer's brief not taken place.

The Supreme Court has not looked with favor upon the efforts of taxpayers to rescind waivers filed after the expiration of the period of limitations. In all of the cases hereinbefore cited, in which the validity of such waivers was sustained, it is probable that both parties were under the impression that the period had not expired when the waivers were executed. This seems to be quite clear in the case of Burnet v. Chicago Railway Equipment Co., 282 U. S. 295, 303, 51 S. Ct. 137, 75 L. Ed. 349. Amongst the reasons given by the taxpayer for the invalidity of the waiver there under consideration was that it had been secured by duress. The Commissioner was of the opinion that the period had not expired, and suggested a waiver so as to make unnecessary the imposition of a jeopardy assessment. Although the period of limitations had in fact expired, the court held that a waiver given under such circumstances was not invalid. The decision does not expressly show whether the taxpayer was also of the opinion that the period of limitations had not expired when the waiver was given; but its vigorous defense of the case indicates that it shared the opinion of the Commissioner. This case alone seems to be a sufficient answer to the taxpayer's argument herein that the representation that the period of limitations had not expired, to be gathered from the Commissioner's request for a waiver, was ground for the cancellation of the waiver. The case also shows that in the opinion of the court the circumstances did not disclose that the taxpayer had been unjustly treated so as to make the waiver inoperative; and to this extent supports the view we now hold in the pending case that no such injustice to the taxpayer has been proved as would warrant the cancellation of the waivers on the ground of a mutual mistake of law.

█ Finally, there is no basis for the taxpayer's contention that without the intervention of equity the waivers were invalid at law because they were given in ignorance of the right to which the waivers related. As we have pointed out, the taxpayer was fully acquainted with all the relevant facts, and it must be assumed that he was cognizant of his rights under the law. It is only when circumstances of the kind hereinbefore described are found, that ignorance of the law may be taken into account. The entire discussion by the taxpayer of the principles underlying relief in equity from the consequences of a mistake of law would otherwise have been unnecessary.

The judgment of the District Court is affirmed.