IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PETE SPAN, *Plaintiff/Appellant*,

*v.*

MARICOPA COUNTY TREASURER, *Defendant/Appellee*.

No. 1 CA-CV 16-0762
FILED 2-19-2019

Appeal from the Superior Court in Maricopa County
No. CV2008-007180
The Honorable James T. Blomo, Judge, *Retired*

**AFFIRMED**

COUNSEL

Law Office of Brian K. Stanley, Tempe
By Brian K. Stanley
*Counsel for Plaintiff/Appellant*

Maricopa County Attorney's Office, Phoenix
By D. Chad McBride, Charles Trullinger
*Counsel for Defendant/Appellee*

**OPINION**

Presiding Judge Diane M. Johnsen delivered the opinion of the Court, in which Judge Kent E. Cattani joined. Judge Jennifer M. Perkins concurred in part and dissented in part.

**J O H N S E N**, Judge:

**¶1**         Pete Span failed to pay taxes assessed against property he owned in Maricopa County.  The purchaser of the resulting tax lien eventually filed to foreclose the lien.  Notified of the pending action, Span paid $102,989.94 to redeem the lien, and Maricopa County forwarded the money to the purchaser of the lien.  This court later ruled the lien had expired before the purchaser filed to foreclose.  At issue now is an unjust-enrichment claim Span filed against the County to recover the amount he paid to redeem the lien.  The superior court entered summary judgment against him.  We affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**         After Span failed to pay property taxes due on his property for 1993, Maricopa County sold a tax lien on the property at auction in 1995.  The County Treasurer issued a certificate of purchase to the buyer of the lien (the "CP holder"), which later paid taxes due on the property for 1994, 1995 and 1996.  The CP holder, a profit-sharing plan, filed a complaint to foreclose its tax lien on February 9, 2007.  The foreclosure complaint properly named Span and the County as defendants, and the CP holder served the defendants by publication.  The complaint alleged that on January 3, 2007, the CP holder had sent Span notice by certified mail of its intent to foreclose.  *See* Ariz. Rev. Stat. ("A.R.S.") § 42-18202(A) (2019) (holder of certificate must give notice by certified mail to property owner at least 30 days before filing a foreclosure complaint).[1]

**¶3**         On March 12, 2007, the County Treasurer sent Span a form letter apparently triggered by the filing of the foreclosure complaint.  The letter listed the amounts the CP holder had paid and stated: "This statement shows the amount due and payable in order to redeem your property.  To remove these tax liens, please return this statement with your payment . . . ."  Span paid the County Treasurer the redemption amount of $102,989.94 on March 30.  On appeal, he argues he made his payment "under protest," and our record contains a one-page screenshot of a document from the County Treasurer's Office dated March 30, 2007, that states, "paid under protest for 10 yr exp. statute."  The County Treasurer forwarded Span's payment to the CP holder, and the superior court dismissed the foreclosure action on April 20, 2007.

---

[1]         Absent material revision since the relevant date, we cite the current version of a statute or rule.

¶4 Span did not respond to the foreclosure complaint before it was dismissed, nor did he move to enjoin the foreclosure. Instead, on May 7 he filed a document titled "Special Appearance Request for Clarification of the Court's Order, and Request for Tolling the Time & Additional Time to File an Answer and File a Counter-Claim, Etc." In that filing, Span asserted that the court had dismissed the foreclosure complaint without his knowledge or consent and argued he had a right to file a counterclaim against the CP holder and the County. There was no response to Span's filing, and the superior court made no further rulings in the matter.

¶5 The following year, Span filed a complaint against the County, the County Treasurer and others (but, notably, not the CP holder). Span alleged that the lien had expired before the CP holder filed for foreclosure and that the County had improperly required him to redeem the expired lien. He alleged breaches of contract and fiduciary duty, negligence, violation of statutory and constitutional rights, and unjust enrichment. As damages, he sought recovery of what he paid to redeem the lien, plus interest, and $500,000 "or more" for asserted violations of his constitutional rights.

¶6 The superior court entered judgment for the defendants on all claims and also found Span had not timely served two individual defendants, including the Maricopa County Treasurer. On appeal, this court reversed, holding the lien had expired by statute in 2005, as Span had argued. *Span v. Maricopa County Treasurer*, 1 CA-CV 12-0771, 2014 WL 1233463, at *4, ¶ 14 (App. Mar. 25, 2014) (mem. decision); *see also* A.R.S. § 42-18208(A) (2019). The court also concluded, however, that Span had waived any challenge to the dismissal of his claims against the individual defendants by failing to raise that ruling on appeal. *Id*. at *1, ¶ 1, n.1.

¶7 On remand, the parties filed cross-motions for summary judgment. The County pointed out that it did not possess Span's redemption payment, having forwarded it to the CP holder. The County further argued the CP holder had given Span 30 days' notice of the foreclosure action so that he could have challenged the validity of the lien in that matter before he paid to redeem it. Span, meanwhile, sought summary judgment that the Treasurer was still a party to the case.

¶8 The superior court granted the County's motion for summary judgment, finding that under *Fridena v. Maricopa County*, 18 Ariz. App. 527 (1972), Span had no claim against the County, and denied Span's cross-motion for summary judgment regarding the Treasurer. Span timely

appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) (2019) and -2101(A)(1) (2019).

## DISCUSSION

¶9          Summary judgment is proper "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). On appeal from entry of summary judgment, we review questions of law *de novo* and consider the evidence and all reasonable inferences in the light most favorable to the non-moving party. *Lennar Corp. v. Transamerica Ins. Co.*, 227 Ariz. 238, 242, ¶ 7 (App. 2011).

### A.      *Respondeat Superior* **and Unjust Enrichment.**

¶10          The County urges us to affirm the judgment under *Fridena*, which addressed a county's liability based on *respondeat superior* for the conduct of a county official. *See* 18 Ariz. App. at 528-29. But Span's unjust enrichment claim is based at least in part on actions by the County – its receipt of and failure to return money that Span argues belongs to him – and not solely on the actions of a County employee or official. Because Span's claim includes allegations that are not based solely on vicarious liability or *respondeat superior*, *Fridena* does not dispose of the claim.

### B.      **Unjust Enrichment.**

¶11          Span's complaint alleged that even though the lien had expired before the foreclosure action commenced, the County "bilked and forced" him to pay to redeem the lien. Underlying Span's claim was A.R.S. § 42-18208, a statute enacted in 2002, which, as amended and as relevant here, states:

> If a tax lien that was purchased pursuant to § 42-18114 on or before August 31, 2002 is not redeemed and the purchaser or the purchaser's heirs or assigns fail to commence an action to foreclose the right of redemption on or before ten years from the date that the lien was purchased, the certificate of purchase or registered certificate expires and the lien is void.

A.R.S. § 42-18208(A); *see* A.R.S. § 42-18127 (2019) (same, for liens purchased "from and after August 22, 2002"); *Span*, 1 CA-CV 12-0771, at *3, ¶ 12. Span's complaint alleged that by 2007, the lien the CP holder purchased on his property in 1995 had expired and "became invalid" because the CP holder did not commence foreclosure within ten years.

¶12     In addressing Span's allegations, we note first that there is no evidence in the summary judgment record for his contention that the Treasurer "bilked," compelled or coerced him to pay to redeem the lien. As recounted above, the Treasurer sent a form letter to Span after the CP holder filed the foreclosure action to inform him of the tax payments the CP holder had made on his property. But the Treasurer only informed Span of the amount he would have to pay if he chose to redeem the lien; the letter did not threaten to take any action or impose any consequence against Span if he decided not to pay. By Span's account, he paid the money to the County "under protest" because the CP holder's foreclosure action was time-barred. But on summary judgment, he offered no evidence to show the Treasurer did anything to compel him to make the payment, "under protest" or otherwise. And his assertion to the contrary belies logic: Whether Span would decide to redeem the lien was a matter entirely between him and the CP holder. Once the CP holder had paid the taxes on the property, it was irrelevant to the County whether Span chose to redeem. Moreover, Span does not dispute that, after accepting his redemption payment, the County immediately forwarded the money to the CP holder. *See* A.R.S. § 42-18155(A) (2019) ("On demand of any person who is entitled to redemption money held by the county treasurer, the treasurer shall pay the money to that person on the surrender of the certificate of purchase or on the redemption of the registered certificate for the redeemed tax lien.").

¶13     When Span commenced this litigation the following year, the County objected to his contention that the tax lien on his property had expired. The County argued the 10-year period of repose was tolled when the holder of the lien paid property taxes ("subtaxes") imposed on the property in subsequent years because, by statute, the subtaxes had been added to the original certificate of purchase. *See* A.R.S. § 42-18121(A) (2019). The County argued that because the CP holder paid taxes due on Span's property for 1994, 1995 and 1996, making the last payment (for tax year 1996) on June 11, 1997, the lien "did not become eligible for expiration . . . until June of 2007 [i.e., 10 years after the CP holder last paid a subtax]." As noted above, in the prior appeal in this case, this court disagreed with the County and held that the statutes did "not provide that paying subsequent taxes tolls or extends" the 10-year period of repose. *Span*, 1 CA-CV 12-0771, at *4, ¶ 14. (After issuance of that decision, the legislature amended the tax lien and foreclosure statutes so that payment of a subtax by the holder of a certificate of purchase in Maricopa County will give rise to a separate new

5

lien for that year's taxes that will be subject to its own 10-year period of repose.[2])

¶14	This court's disagreement with the County's understanding of the prior version of the statutes, however, did not mean the County was unjustly enriched by Span's redemption payment or that Span otherwise is entitled to relief against the County. Span could have challenged the validity of the lien by seeking to enjoin the foreclosure on that ground. A ruling in his favor would have returned the property to him free and clear of the tax lien absent any redemption obligation. That result would have been a windfall to Span – he would have retained the property without having paid the taxes, and the CP holder, which had paid the taxes on the property, would have had no further recourse. But Span did not challenge the foreclosure action, and we are unpersuaded that he is entitled to obtain that windfall at the expense of the County by claiming unjust enrichment.

¶15	To make a claim for unjust enrichment, a plaintiff must show (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy at law. *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 318, ¶ 10 (App. 2012). Unjust enrichment is a means of restitution, which is a "flexible, equitable remedy" that looks to "'the ties of natural justice and equity' to make compensation for the benefits received." *State v. Ariz. Pension Planning*, 154 Ariz. 56, 58 (1987) (quoting *Murdock-Bryant Const., Inc. v. Pearson*, 146 Ariz. 48, 53 (1985)).

¶16	As the County argues, unjust enrichment is not available when the defendant has not retained a benefit. The factual predicate of an unjust enrichment claim is that someone been "unjustly enriched." *See, e.g.*, *Murdock-Bryant Const.*, 146 Ariz. at 54 ("[T]he mere receipt of a benefit is insufficient. Restitutionary relief is allowable only when it would be

---

[2]	The 2015 legislation directed that, beginning in calendar year 2016, when the holder of a certificate of purchase for tax year 2014 and afterward in a county of more than 3,000,000 pays taxes due on the property in subsequent years, the treasurer must issue a separate certificate of purchase for each subsequent year's taxes. 2015 Ariz. Sess. Laws, ch. 322, § 2 (1st Reg. Sess.) (amending A.R.S. § 42-18121(B)). The legislation further provided that each such certificate of purchase for a subsequent year's taxes is subject to its own ten-year repose period that commences upon its issuance. 2015 Ariz. Sess. Laws, ch. 322, § 5 (1st Reg. Sess.) (amending A.R.S. § 42-18201(B)).

inequitable or unjust for defendant to retain the benefit without compensating plaintiff."); *Pyeatte v. Pyeatte*, 135 Ariz. 346, 352 (App. 1982) (plaintiff seeking restitution "must demonstrate that [defendant] received a benefit, that by receipt of that benefit [defendant] was unjustly enriched at [plaintiff's] expense").

¶17        Span argues the County was "enriched by the double receipts" of the taxes due on his property, but that is not true. The County did not keep Span's payment, but instead forwarded the money to the CP holder, which had paid the taxes on Span's property in the first instance. When the County delivered Span's payment to the CP holder, it did so under color of law because it understood the tax lien remained valid due to the CP holder's payments of subtaxes on the property. Span cites no authority to support his contention that a party that forwards a payment to another under color of law, as the County did here, may be liable on a claim to recoup such a payment under unjust enrichment.

¶18        Our dissenting colleague argues that in this situation, one cannot avoid liability by "funneling" the benefit to a third party. *Infra* ¶ 29. We agree that a party who unjustly obtains an asset cannot avoid an unjust enrichment claim by simply gifting the asset to someone else. But that is not what happened here. After Span chose to pay the redemption amount, the County paid it over to the CP holder because the County understood the law required it to do so. The dissent contends the County Treasurer knew at the time of the foreclosure action that a tax lien expires after 10 years. *Infra* ¶ 31. There is no dispute about that general proposition; the dispute was whether the 10-year repose period would be tolled when, after purchasing a lien, a CP holder paid other taxes as they came due on the property in subsequent years. The dissent cites a fragment of a web posting that Span submitted on summary judgment, but that evidence hardly supports the dubious proposition that the County knew its position on that issue was contrary to law. Labeled "Page 4 of 4," the posting does not address the "subtax" issue on which the County's legal argument turned.

¶19        Furthermore, Span's unjust enrichment claim fails as a matter of equity. Under the Restatement (Third) of Restitution and Unjust Enrichment ("Restatement") § 62 (2011), unjust enrichment does not necessarily result whenever an obligor makes a payment that has become unenforceable due to the passage of time. *See* Restatement § 62, illus. 1 & cmts. a, b. The Restatement explains that whether unjust enrichment has occurred must be considered in such a case "in the context of the parties' further obligations to each other" and "in view of the larger transactional context within which the benefit has been conferred." Restatement § 62 &

cmt. a. Consistent with this principle, under Arizona law, a time-barred debt is unenforceable but not extinguished. *See Andra R Miller Designs LLC v. US Bank NA*, 244 Ariz. 265, 269, ¶ 11 (2018), *see also Provident Mut. Bldg.– Loan Ass'n v. Schwertner*, 15 Ariz. 517, 518-19 (1914) (unpaid debt is not extinguished by the expiration of the limitation period, "only the remedy has been lost," preventing recovery when "properly invoked by the debtor").

¶20        Under these principles, expiration of the tax lien due to the passage of time does not entitle Span to recover his redemption payment based on unjust enrichment. This principle was applied in *Clifton Manufacturing Co. v. United States*, 76 F.2d 577 (4th Cir. 1935), a case in which a taxpayer sued for a refund of taxes that were barred by the statute of limitations. The taxpayer alleged it had executed a waiver consenting to the taxes under the mistaken impression that the statutory period of limitations had not expired. *Id.* at 578. The taxpayer argued he was entitled to a refund because the Internal Revenue Service had induced the waiver, but on appeal, the court noted that, as here, the government at the time was "under the belief that an assessment and collection of the tax could still legally be made." *Id.* at 579. The court affirmed judgment against the taxpayer:

> The real question . . . is whether such injustice would result from the government's retention of the money paid by the taxpayer as would justify the cancellation of the waivers. In our opinion, the answer should be in the negative. It is of great significance that the taxpayer was in truth indebted to the United States for taxes in the amount which it paid. . . . Thus the situation differs widely from the decided cases in which a failure to rescind a transaction would have entailed an unjust enrichment of the party against whom relief was sought.

*Id.* at 581; *see also Rothensies v. Edwin J. Schoettle Co.*, 46 F. Supp. 348 (E.D. Pa. 1939) (taxpayer not entitled to return of "abatement bond" posted during appeal of tax challenge when collection of the tax was overturned on limitations grounds). Unlike the claimants in these federal cases, Span is not a taxpayer seeking a refund; the CP holder, of course, had paid the taxes due on the property. *Cf.* A.R.S. § 42-11005(A) (2019) (suit to recover property tax "illegally levied, assessed or collected"). But the underlying principle -- unjust enrichment requires consideration of the overall context of the transaction – applies here just as in those cases.

¶21 Our dissenting colleague asserts these authorities are inapposite because Span asserts he made the redemption "under protest." *Infra* ¶¶ 27-28. But that fact only helps doom his unjust enrichment claim. Span was on notice of the foreclosure action and was a named defendant in that matter. He also knew that the County disagreed with his contention that the tax lien was void. On summary judgment, he averred that the County told him to make the redemption payment "under protest and take it to court." But, and contrary to the dissent's account, *infra* ¶ 28, Span did not follow that advice. If Span believed the CP holder's lien was unenforceable, it was up to him to enjoin foreclosure of that lien. Because Span did not challenge the foreclosure, it went forward, and the County delivered Span's redemption payment to the CP holder. The dissent's position would require the County to engage attorneys to challenge a foreclosure whenever a taxpayer objects to it or "protests" a required payment. But neither our dissenting colleague nor Span cites authority for that proposition, and imposing that duty on the County – rather than on the protesting party – is not logical.

¶22 In sum, regardless whether Span might have successfully prevented the CP holder from foreclosing on his property, he has not established any unfairness in the overall result as between him and the County such that he is entitled to relief from the County under principles of unjust enrichment. The $102,989.94 redemption payment Span seeks to recoup is the amount he would have had to pay in taxes imposed on his property, but for the CP holder's payment of those taxes. As things now stand, Span has not been unjustly deprived of anything – the redemption payment he made is what he would have had to pay in the ordinary course to keep the taxes current on property he now holds free of a lien. And the County was not enriched because it did not retain the redemption payment, but forwarded it to the CP holder, which had paid the taxes in the first place. On the other hand, if Span were to prevail on his claim for unjust enrichment, he would wind up owning the property free and clear of any tax lien without having paid the taxes or their equivalent. And the County effectively would have been compelled to relinquish $102,989.94 in taxes that it properly assessed and collected against the property.[3]

¶23 For the same reason, we do not understand the dissent's reference to the County's "claim" to the proceeds of the redemption, as if the County were competing with Span for those funds. *Infra* ¶ 34. The County

_____

[3] Our record does not reveal whether Span has sought to recover his redemption payment from the CP holder based on unjust enrichment or any other theory.

had no claim to the money; it was entirely disinterested in whether Span chose to make the payment. Likewise, there is no suggestion in the record to support the dissent's assertion that the County's possession of the proceeds was more than "momentary." *Infra* ¶ 32. When Span paid to redeem the lien, the County acted pursuant to its understanding of its legal obligation to forward the payment to the CP holder.

## C.      Claims Against the Individual Defendants.

**¶24**          Span also argues on appeal that this court's earlier decision did not resolve his claims against the Treasurer. In the earlier decision, this court ruled that Span waived his challenges to the superior court's resolution of those claims by not raising them in that appeal. *Span*, 1 CA-CV 12-0771, at *1, ¶ 1, n.1. When an appellant fails to challenge part of a final judgment in an appeal, that part of the judgment is affirmed by implication and may not be challenged in a subsequent appeal. *See Bogard v. Cannon & Wendt Elec. Co.*, 221 Ariz. 325, 332, ¶ 24 (App. 2009). As applied here, Span's failure to make any argument in his first appeal about the dismissal of the individual defendants means that dismissal was affirmed in the first appeal.

## CONCLUSION

**¶25**          We affirm the superior court's entry of judgment against Span.

**P E R K I N S,** Judge, concurring in part, and dissenting in part:

**¶26**          I agree with the majority's conclusions that *Fridena* is inapplicable and Span waived his claims against the individual defendants (Parts A and C of the decision). I reach a different conclusion, however, on Span's unjust enrichment claim. The majority's holding hinges on two arguments: first, that the County need not repay Span for his redemption payment because the County thought it was necessary at the time; and second, that Span cannot regain his now-unencumbered property without meeting his tax obligation. The County should not benefit from its own legal mistake at Span's expense. The text of the statute contemplates that Span may regain his unencumbered property under these circumstances. The majority disregards this, violating established separation of powers. *See* Ariz. Const. art. 3. I therefore respectfully dissent from the majority's unjust enrichment holding.

**¶27**          The procedural posture of this case is crucial because the standard of review for a grant of summary judgment colors the analysis

throughout. The majority initially concludes that the record does not contain evidence that the County compelled or coerced Span to make the redemption payment. *Supra* at ¶ 12. But Span alleged he only paid the redemption because the County told him failure to do so would increase the amount due. And as the majority states, the court must view the facts in the light most favorable to the non-moving party and weigh all reasonable inferences in that party's favor. *Supra at* ¶ 9; *Sanders v. Alger*, 242 Ariz. 246, 248, ¶ 2 (2017). In support of his allegations of coercion, Span offered a copy of his redemption payment check, on which he wrote that he made the payment "under protest." At a minimum, this evidence is sufficient to infer coercion and survive summary judgment.

**¶28** Span further alleged that the County Treasurer advised him to pay the amount demanded under protest, and then take the matter to court for challenge. This is consistent with the process required for challenging a tax collection as illegal. *Citizens Telecomm. Co. of White Mountains v. Ariz. Dep't. of Revenue*, 206 Ariz. 33, 37, ¶ 12 (App. 2003) (citing A.R.S. § 42-11005(A)) ("Arizona law requires that a taxpayer pay the tax owed prior to bringing an illegal collection claim."). While § 42-11005(A) does not clearly apply here, it provides a context for understanding the Treasurer's direction to Span, which he followed by paying the redemption and subsequently bringing this case challenging the County's actions.

**¶29** The majority next concludes that the County has not retained a benefit because it no longer has Span's redemption payment. *Supra* at ¶ 17. But the County was paid twice, and gratuitously divested itself of the second payment. The majority would absolve a defendant from liability for unjust enrichment if the defendant funnels its ill-gotten gain to someone else before the plaintiff comes knocking. That's not fair or logical. Such an inequitable result is particularly odd in the context of a claim seeking an equitable remedy. The majority cites only cases that do not involve a defendant who has divested himself of the purported benefit by passing it along to a third party. *See Murdock-Bryant Constr., Inc. v. Pearson*, 146 Ariz. 48, 54 (1985) (holding that restitution was appropriate where the defendant received, and thereby retained, the benefit of the plaintiff's services); *Pyeatte v. Pyeatte*, 135 Ariz. 346, 352, 356-57 (App. 1982) (Restitution was appropriate to wife when husband retained the benefit from her support of the household during his legal education given he "left the marriage with the only valuable asset acquired during the marriage—his legal education and qualification to practice law.").

**¶30** The majority disregards these facts. Neither the County nor the majority disputes that the County had no legal obligation to disperse

funds to the CP holder but did so anyway. Section 42-18155(A) instructs the Treasurer to pay "any person **who is entitled to** redemption money." (Emphasis added.) Given the void lien, *Span v. Maricopa County Treasurer*, 1 CA-CV 12-0771, 2014 WL 1233463 *4, ¶ 15 (Mar. 25, 2014) (mem. decision) ("By 2005, the original lien . . . had expired."), the CP holder was not entitled to the money and the County's payment was contrary to law. Thus it was legally gratuitous, even if we may not fairly characterize it as a "gift."

**¶31**     The County cannot escape the clutches of unjust enrichment merely based on its purported legal mistake—we do not generally recognize a legally valid excuse based on legal mistake. *Jennings v. Woods*, 194 Ariz. 314, 326, ¶ 60 (1999) ("West's ignorance of the law or mistaken interpretation of it does not excuse him from its application."). The County certainly should not be free from accountability under the text of the very statutes that define its authority. Here, the Legislature  placed the County on notice of the ten-year limit imposed on property tax liens when it adopted § 42-18208 in 2002. The record indicates the County was aware of the statute's operation as of January 21, 2007, two months before notifying Span of the foreclosure complaint. At that time, the County's Tax Certificate Auction Web Site contained the question "What is the 'life' of a tax certificate?" with the following answer: "Certificates are dated **as of the date the purchase was made**. Ten years later, if the purchaser has taken no additional action to foreclose the tax lien, the lien expires and is voided. **No payments will be made to the purchaser**." Yet, the County paid the CP holder here.

**¶32**     The majority also rejects Span's claim on the basis that the County merely acted as a "conduit" between Span and the CP holder. *Supra* at ¶ 17. The County's demand for Span's redemption payment was unjust and it engaged in more than a mere "momentary possession" given the statutory restriction to pay only those legally entitled to receive payments. To be sure, the majority's legal authorities—the Restatement (Third) and a 1935 tax case–instruct that there is no unjust enrichment when the plaintiff has made a payment for a debt that "has been rendered unenforceable by the passage of time." *Supra* at ¶ 19-20. But neither authority encompasses the situation at hand.

**¶33**     Section 62 of the Restatement (Third), comment a, tells us to look to "the larger transactional context within which the benefit has been conferred." The Fourth Circuit did so when considering tax payments made despite the expiration of the statute of limitations. The court found "great significance that the taxpayer was in truth indebted to the United States for

12

taxes in the amount which it paid." *Clifton Mfg. Co. v. United States*, 76 F.2d 577, 581 (4th Cir. 1935).

¶34　　　　*Clifton* is thus distinguishable. First, both the taxpayer and the government  believed the tax payment was owed at the time it was made; neither party recognized that the limitations period had run. So the plaintiff did not pay "under protest" and the defendant did not demand payment despite being alerted to a legal infirmity in its claim to the money. Second, the law at issue in this case rendered the County's claim to Span's redemption payment void—this was not a situation where the debt was still owed but the government simply couldn't collect it because of a statute of limitation. Rather, the CP holder had already paid the tax debt to the County and the only remaining debt was by operation of the tax lien, which § 42-18208(A) declared void. The County had no statutory authority to collect Span's redemption payment and no indebtedness remained.

¶35　　　　The majority rejects restitution for Span because it would result in a windfall—he would "own[] the property free and clear of any tax lien without having paid the taxes or their equivalent." *Supra* at ¶ 21. But, even if true, the legislature has mandated such a windfall and our role is not to question the wisdom of legislative action.

¶36　　　　There is no question that Span, having repeatedly failed to pay his property taxes, is not a particularly sympathetic plaintiff. Similarly, however, the County is not a particularly sympathetic defendant. More importantly, a request for equitable relief does not transform our role into the arbiter of which party is more sympathetic. Equitable relief is a judicial means of ensuring a right result. It is not an invitation for the judiciary to invade the Legislature's province by subverting the legislative will as expressed in the plain text of a statute. The foreclosure action and the County's payment to the CP holder were each contrary to the operative

statute, while the reversion of an unencumbered property ownership to Span falls directly within the statutory text. The equities under such circumstances do not weigh in the County's favor.

¶37　　　　　I would reverse the superior court's grant of summary judgment on Span's unjust enrichment claim, and therefore respectfully dissent as to part B.

