NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

PAUL J. GREENWELL, et al., *Plaintiffs/Appellants,*

*v.*

JANETTE ALLEN, *Defendant/Appellee.*

No. 1 CA-CV 22-0074
FILED 12-8-2022

Appeal from the Superior Court in Maricopa County
No.  CV2019-054427
The Honorable Sally Schneider Duncan, Judge (Retired)

**REVERSED IN PART AND AFFIRMED IN PART**

COUNSEL

Paul J. Greenwell, Phoenix
*Plaintiff/Appellant/Counter-defendant*

Barbara Greenwell, Phoenix
*Plaintiff/Appellant/Counter-defendant*

The Kozub Law Group PLC, Scottsdale
By William A. Kozub
*Counsel for Defendant/Appellee/Counter-claimant*

---

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge David D. Weinzweig and Judge D. Steven Williams joined.

---

H O W E, Judge:

¶1 Paul and Barbara Greenwell appeal the trial court's granting Janette Allen summary judgment.[1] For the following reasons, we reverse in part and affirm in part.

## FACTS AND PROCEDURAL HISTORY

¶2 In January 2019, Barbara and Janette formed member-managed Home Options Design Bar, LLC ("Home Options") to operate an interior design business. Barbara and Janette were the only members, and Janette was also the statutory agent. Paul was not expected to take part in operating the business. Janette owned a commercial building in Scottsdale, where she and Barbara intended to operate the business. Before the business opened, Paul renovated the building, changing out the restroom sink and toilet, hanging tile, and installing hardwood. He also built displays in the showroom. The parties never executed a written agreement, and Janette believed that Paul had been paid hourly. Paul believed his uncompensated work was "a fair trade off for the rent." He "worked from 7 to 4, 6 days a week (often 7) without pay." Paul acknowledged that Janette "placed a value of around $3,000 to $4,000 a month on the rent, [he] placed a similar value on [his] labor." Barbara and Janette had split some renovation costs evenly. The parties did not have a lease agreement, nor was one proposed. Renovations lasted from January through June 2019.

¶3 In June 2019, Janette emailed the Greenwells terminating the business for their failure to pay rent from January through June. The email further stated that the Greenwells had conducted business outside of the parties' agreement despite their fifty-fifty arrangement, which Janette claimed showed that the parties had not established an agreement for running the business. Janette notified the Greenwells that they could

---

[1] We respectfully refer to all the parties by their first names to avoid confusion.

remove their personal property from the building by July 2. Janette sent another email asking the Greenwells to remove their personal property. They responded that, "[i]t is not possible to have the items removed by July 2" and did not collect their property.

¶4        On June 28, Janette posted a lock-out notice against the Greenwells but gave them an opportunity to collect their personal property through professional movers. They never collected their property. In August, Janette's sister texted the Greenwells that they could remove their property from the building. They declined, claiming that one day's notice was not enough time to gather movers and trucks. They stated that they would "go to work on a plan for next week." Several days later, the Greenwells notified Janette's sister that they could not "pick up the furniture yet, [t]here are issues to be resolved with this matter." Instead of collecting their property, the Greenwells, through the Arizona Justice Center, demanded reimbursement from Janette for renovation and labor costs in the amount of $8,063.34 with 15 days to collect their personal property from the building.

¶5        Janette asked them again in a September email to collect their personal property, giving them a three-hour window on three separate dates that month. She stated, "Failing to respond or arrange for removal of their items by the dates noted above will be confirmation that they no longer want their belongings and I will be forced to arrange for the items to be discarded as I need to empty the space in preparation for leasing." Several days later, Janette followed up with an email that the Greenwells' fireplace would be "disassembled for [their] movers simply to load as early as this morning." Paul responded that "[t]he requests to remove our items have not been acknowledged owing to the obvious and intentional impossibility." He listed time constraints and lack of manpower as reasons. In October, Janette disposed of their personal property.

¶6        Without stating clear claims, the Greenwells sued Janette for $8,063.43 in reimbursement for renovations to the building and return of their personal property or its equivalent value of $40,656.35. Janette simultaneously counterclaimed, alleging that the parties had orally agreed to pay half of the $4,000 monthly rent, which the Greenwells did not pay. She alleged that they owed $12,000 in unpaid rent from the commencement of the business in January 2019 through June 2019.

¶7        The parties disputed whether they agreed to split the $4,000 monthly rent of the building. Janette alleged that they had agreed to split the rent equally. The Greenwells alleged that the parties had agreed to defer

rent collection until the business commenced. They also alleged that Janette never requested rent from them, nor did the parties put money towards rent, although the Greenwells paid Janette for utilities and building expenses. Meanwhile, Janette had listed the building for rent and alleged that the parties agreed that the business would move to another location once a third-party tenant was found. The parties also disputed whether Home Options would move locations once the building was rented to a third party. Janette stated that Home Options began operating in January 2019, while the Greenwells attested that Home Options would not begin operating until June 2019 after the renovations.

¶8            The court found that the case was subject to arbitration. Because no specific causes of action were pled, the arbitrator had to identify the causes of action, which it found were breach of contract, breach of fiduciary duty, and deprivation of property. The arbitrator found for Janette, reasoning that the Greenwells failed to demonstrate that (1) a contract existed between the parties, (2) Janette had breached her fiduciary duty to the Greenwells, and (3) Janette had converted the Greenwells' property. The arbitrator dismissed the Greenwells' complaint without prejudice. The Greenwells appealed the arbitration award, requesting the case be set for trial.

¶9            Janette did not move for summary judgment until August 2021, eight months after the parties' dispositive motion deadline. She argued that the Greenwells' $8,063.34 reimbursement claim was barred because Paul was not a licensed contractor, the Greenwells should have sued Home Options because they contributed their personal property to the business, and the Greenwells abandoned this property, thus precluding their conversion claim. The Greenwells responded that Paul "had no direct interest in Home Options other than helping to see that his wife's new business venture was successful." They also attested that Paul was not a licensed contractor, but that the Greenwells, Janette, Janette's sister, and Janette's boyfriend all worked together to complete the renovations. They also attested that Barbara and Janette agreed to split the renovation costs in half. The Greenwells amended their response to argue that Janette moved for summary judgment and filed her affidavit in bad faith. Specifically, they argued that she lied in her affidavit and moved for summary judgment to delay the proceeding because she previously had evaded service.

¶10          During oral argument, Janette conceded that the motion was untimely and had not requested permission to extend the time. The court granted Janette summary judgment, finding no prejudice from the untimely motion, and stating that the Greenwells could not recover for the

4

renovations because they were not licensed contractors. The court also found that the Greenwells abandoned their personal property after having "ample notice" to remove it, eliminating their conversion claim. The Greenwells moved for reconsideration, which the court denied. The Greenwells timely appealed.

## DISCUSSION

¶11      The Greenwells argue that (1) Janette's motion for summary judgment was untimely and filed in bad faith, (2) they are entitled to reimbursement for supplying materials and renovating Janette's building, and (3) Janette converted their personal property. We review a grant of summary judgment de novo, "viewing the facts and inferences in the light most favorable to the non-prevailing party." *Hale v. Window Rock Unified Sch. Dist.*, 252 Ariz. 420, 423 ¶ 6 (App. 2021) (quoting *BMO Harris Bank N.A. v. Wildwood Creek Ranch, LLC*, 236 Ariz. 363, 365 ¶ 7 (2015)). A court properly grants summary judgment if no genuine dispute of material fact exists and "the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). A trial court should grant summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990).

## I.      Preliminary Matters

¶12      As a threshold matter, the Greenwells argue that Janette's motion for summary judgment was untimely and that the court did not "state on the record the reasons for granting or denying the motion." Ariz. R. Civ. P. 56(a). First, even though Janette's motion was untimely, the court did not err in ruling on the motion. The trial court has discretion to grant extensions for filing motions. *See State v. Colvin*, 231 Ariz. 269, 271 ¶ 7 (App. 2013) (The trial court has "discretion to extend the time for filing motions and, implicitly, to hear untimely motions."). "A summary judgment motion may not be filed later than the dispositive motion deadline set by the court or local rule, or absent such a deadline, 90 days before the date set for trial." Ariz. R. Civ. P. 56(b)(3). Here, the dispositive motion deadline was December 1, 2020. Janette moved for summary judgment in August 2021 and had not first requested an extension. Although the trial court found the motion untimely, it found that the Greenwells were not prejudiced and ruled on the motion. They had opportunity to respond to the motion and file their affidavit and exhibits. Because the record shows no prejudice and the Greenwells have not argued that they were prejudiced, the court did

not err. *See Wilson v. Savon Stations, Inc.*, 15 Ariz. App. 136, 136–37 (App. 1971) (holding no error for trial court's grant of untimely motion for summary judgment because the record showed no prejudice; the plaintiffs had opportunity to oppose the motion via oral testimony).

¶13 Second, the court did state its reasons on the record at the hearing, even if not in its written ruling, which satisfies Rule 56(a). *Cf. Kopacz v. Banner Health*, 245 Ariz. 97, 102 ¶ 21 (App. 2018) (holding that the court satisfied Rule 56(a) although it stated its reason for granting summary judgment in the minute entry rather than on the record). The court therefore did not err.

¶14 The Greenwells also argue that Janette filed her motion for summary judgment and affidavit in bad faith, lying to the court and delaying proceedings by avoiding a jury trial. But the trial court granted summary judgment, which defeats any argument that the motion was filed in bad faith. *See In re Ghostley*, 248 Ariz. 112, 117 ¶ 21 (App. 2020) (stating that our function is not "to reweigh the facts or to second-guess the credibility determinations of the judge who had the opportunity to evaluate the witnesses' demeanor and make informed credibility determinations). And prevailing on summary judgment "does not deprive a plaintiff of his constitutional rights to a jury trial because, in such cases," no genuine issues of fact exist for a jury to consider. *Cagle v. Carlson*, 146 Ariz. 292, 298 (App. 1985). Further, the Greenwells argue that Janette made false statements in her affidavit that they identified in their amended response to Janette's motion. But the statements that the Greenwells identified, though they are disputed, are not material or relevant to the relief sought. The court did not err in ruling on the motion for summary judgment.

## II.      Reimbursement for contracting work

¶15 With the possible exception of certain items, the trial court properly granted Janette summary judgment on the Greenwells' claim requesting reimbursement of $8,063.34 in renovation expenses. A contractor shall not

> commence or maintain any action in any court of the state for collection of compensation for the performance of any act for which a license is required by this chapter without alleging and proving that the contracting party whose contract gives rise to the claim was a duly licensed contractor when the contract sued upon was entered into and when the alleged cause of action arose.

A.R.S. § 32–1153. A contractor is a person who

> for compensation, undertakes to or offers to undertake to, purports to have the capacity to undertake to . . . does himself or by or through others, or directly or indirectly supervises others to . . . [c]onstruct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building . . . or other structure, project, development or improvement, or to do any part thereof . . . .

A.R.S. § 32–1101(A)(3)(a)(i). "[T]he purpose of [A.R.S.] § 32–1153 is to protect the public from unscrupulous, unqualified, and financially irresponsible contractors." *Aesthetic Prop. Maintenance Inc. v. Capitol Indem. Corp.*, 183 Ariz. 74, 77 (1995). An unlicensed contractor may recover if he "furnishes finished products, materials or articles of merchandise" and "does not install or attach such items or installs or attaches such items if the total value of the sales contract or transaction involving such items and the cost of the installation or attachment of such items to a structure does not exceed $1,000, including labor, materials and all other items." A.R.S. § 32–1121(A)(4); *Butch Randolph & Assocs. Inc. v. Int'l Fid. Ins. Co.*, 212 Ariz. 550, 552 ¶¶ 10–11 (App. 2006).

¶16    Here, the record supports that Paul engaged in contracting work in renovating Janette's property, rendering him a contractor for purposes of the Greenwells' collection claim. The contracting work included building displays in the showroom, changing out the restroom sink and toilet, hanging tile, and installing hardwood. The Greenwells do not dispute that Paul did not have a contractor's license. The Greenwells alleged in their complaint that Paul "would renovate the suite at no labor cost, and in exchange [Janette] would defer rent collection until the business was up and running and generating revenue." Neither did Paul's work fall under the licensure exemption because he installed items that along with materials and labor totaled over $8,000. Thus, without a license, Paul may not maintain an action in court to collect for costs associated with the renovation.

¶17    The Greenwells argue that Janette was unjustly enriched. An unjust enrichment claim requires proof of "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Perdue v. La Rue*, 250 Ariz. 34, 42 ¶ 31 (App. 2020) (quoting *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 230 Ariz. 314, 318 ¶ 10 (App. 2012)). But unlicensed

contractors may not recover under an equitable remedy such as unjust enrichment. *Chavira v. Armor Designs of Del., Inc.*, 238 Ariz. 48, 49 ¶ 9 (App. 2015) (stating that "the court cannot use concepts of equity to allow an unlicensed contractor to sue to collect payment"); *see Span v. Maricopa Cnty. Treasurer*, 246 Ariz. 222, 227 ¶ 15 (App. 2019) (stating that unjust enrichment is an equitable remedy). As a matter of law, the Greenwells are not entitled to recover for the contracting work to Janette's building.

¶18 However, although the trial court properly granted summary judgment on these grounds, certain expenses that make up the Greenwells' requested $8,063.34 do not fall under A.R.S. § 32–1153's scope, including payment for candles, internet, and the Arizona transaction privilege tax license. Thus, a genuine dispute does exist about which expenses of the total $8,063.34 fall outside the scope of A.R.S. § 32–1153, and whether the Greenwells are entitled to recover for them. We therefore remand for the trial court to make this determination.

¶19 Janette argues that the Greenwells' claim against her is barred because of their legal relationship as members of Home Options. But a member of an LLC may "maintain a direct action against another member . . . to enforce the member's rights and protect the member's interests, including rights and interests . . . arising independently of the membership relationship." A.R.S. § 29–3801. This action against Janette is therefore proper.

¶20 Janette also argues that A.R.S. § 29–3403 bars the Greenwells from suing her to enforce her contribution to Home Options because they do not have an operating agreement. But the Greenwells seek reimbursement from Janette for their expenses toward Home Options. *Cf.* A.R.S. § 29–3403(A) ("A person's obligation to make a contribution to a limited liability company is not enforceable unless the obligation is set forth in a record signed by the person."). Thus, their claim is not barred, and we remand.

## II.        Conversion

¶21 The court also properly granted Janette summary judgment on the Greenwells' conversion claim. "Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 209 Ariz. 462, 472 ¶ 34 (App. 2005) (quoting Restatement (Second) of Torts § 222A(1) (1965)). But a conversion action cannot stand where a party abandons their property. *See*

*Strawberry Water Co. v. Paulsen*, 220 Ariz. 401, 408 ¶ 16 (App. 2008) (holding that water company had standing to bring conversion action because abandonment was not alleged). A party abandons personal property by "voluntarily and intentionally giv[ing] up a known right." *Grande v. Jennings*, 229 Ariz. 584, 588 ¶ 13 (App. 2012). The party asserting abandonment must affirmatively prove it by clear and convincing evidence, *Paulsen*, 220 Ariz. at 408 ¶ 16, and can prove intent through words or conduct, *Montano v. Luff*, 250 Ariz. 401, 405 ¶ 13 n.6 (App. 2020).

**¶22** Here, the record supports that the Greenwells abandoned their personal property. Janette gave them several opportunities to pick up their property between June and September. But they did not do so. Even when a letter from the Arizona Justice Center on behalf of the Greenwells demanded that they have 15 days to collect their property, they never followed through. Later, in Janette's response, she notified the Greenwells that if they failed to remove their property, she would discard it. The Greenwells gave reasons for not retrieving their property, such as lack of time and manpower, but they do not dispute that they were notified to retrieve their property, nor do they claim that they attempted to retrieve the property. Although the Greenwells argue that Janette placed limitations on the timing of their property retrieval and who was permitted in the building, their responses and failure to act demonstrate their intent to abandon the property. No genuine dispute of material fact exists on this claim, and as a matter of law, the Greenwells are not entitled to recover their abandoned property or an amount equivalent to it.

**¶23** The Greenwells also argue that Allen performed an illegal lock-out because the parties did not have a lease, Janette had never requested rent, and she locked them out four days earlier than the initial vacate date. They raise this argument in service of their conversion claim. Regardless whether they had a lease, the lock-out would be proper. Allen owned the building, and the Greenwells had no right or title to it, whether as a tenant or otherwise. *See* A.R.S. § 33–361(D) ("If the tenant refuses or fails to pay rent owing and due, the landlord shall have a lien on and may seize as much personal property of the tenant located on the premises and not exempted by law as is necessary to secure payment of the rent."). The court, therefore, did not err.

## CONCLUSION

¶24 For the reasons stated, we reverse in part and affirm in part.



AMY M. WOOD • Clerk of the Court
FILED: AA